## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| FARRAH W.,[1] | : | Case No. 3:22-cv-000374 |
| Plaintiff, | : : | District Judge Michael J. Newman |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

### REPORT AND RECOMMENDATION[2]

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in May 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I.     BACKGROUND

Plaintiff asserts that she has been under a disability since October 1, 2017. At that time, she was forty years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision ("Decision," Doc. No. 8-2 at PageID 43-57), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.   FACTS

### A.   The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

> Step 1:    Plaintiff has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date.

> Step 2:    She has the severe impairments of degenerative disc disease, fibromyalgia, an arachnoid cyst with resulting headaches, anxiety, and depression.

Step 3:       She does not have an impairment or combination of impairments
              that meets or equals the severity of one in the Commissioner's
              Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:       Her residual functional capacity (RFC), or the most she can do
              despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
              F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20
              C.F.R. § 404.1567(b), subject to the following limitations: "No more
              than occasional crouching, crawling, kneeling, stooping, balancing,
              or climbing of ramps and stairs. No climbing of ladders, ropes, and
              scaffolds. No work around hazards such as unprotected heights or
              dangerous machinery. No concentrated exposure to loud noise or
              vibrations. [Plaintiff] is limited to performing simple, routine, and
              repetitive tasks. No more than occasional contact with supervisors
              and co-workers; no contact with the general public. No fast-paced
              work or strict production quotas. [Plaintiff] is limited to jobs which
              involve very little, if any, change in the job duties or the work
              routine from one day to the next."

              She is unable to perform any of her past relevant work.

Step 5:       Considering Plaintiff's age, education, work experience, and RFC,
              there are jobs that exist in significant numbers in the national
              economy that she can perform.

(Decision, Doc. No. 8-2 at PageID 45-57.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 57.)

## B.   State Agency Medical Consultants

Lynne Torello, M.D. completed a Disability Determination Explanation form in

September 2020. (AR, Doc. No. 8-3 at PageID 95-99.) Dr. Torello summarized evidence

from six medical records as follows:

-   Health Partners of Miami County:

- o 6/1/20, Dx-Fibromyalgia, tinea corporis, muscle spasms, [hypertension], GERD, allergies.

- o 5/7/20, Exam-Clear breathing, normal cardiac, no edema or tenderness, rash on neck.

- [Ohio State University Health Information Technology]:

  - o 4/16/20, Exam-5/5 strength, normal gait, 6/27 MRI-arachnoid cyst.

  - o 1/25/19, MRI brain-Cyst present.

  - o 3/16/18, Exam-Normal cardiac, clear breathing, multiple tender spots, full reflexes, full strength, normal gait.

  - o 12/1/17, Exam-Clear breathing, normal cardiac, full [range of motion], full strength.

(*Id.* at PageID 95.)

Dr. Torello concluded that Plaintiff's reported symptoms—including an inability to walk more than 50 feet—were only "[p]artially consistent" with the medical evidence. (AR, Doc. No. 8-3 at PageID 97.) She opined that although Plaintiff may be unable to walk more than 50 feet when she was experiencing "flare ups of fibromyalgia . . . she is capable of walking further distances with her full strength/ROM [range of motion], and normal gait" when she was stable. (*Id.*)

Finally, Dr. Torello opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for approximately six hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday. (AR, Doc. No. 8-3 at 98.) According to Dr. Torello, Plaintiff should never climb ladders, ropes, or scaffolds and should avoid all exposure to hazards. (*Id.* at PageID 98-99.) Dr. Torello also opined that Plaintiff could frequently climb ramps and stairs,

6

balance, stoop, kneel, crouch, and crawl. (*Id.* at PageID 98.) Dr. Torello based these

limitations on "[f]ibromyalgia and an arachnoid cyst in the brain." (*Id.* at PageID 98-99.)

Gail Mutchler, M.D. reviewed the updated record and completed a Disability

Determination Explanation form at the reconsideration level in March 2021. (AR, Doc.

No. 8-3 at PageID 115-19.) Dr. Mutchler listed the following additional evidence:

- [Ohio State University Health Information Technology Medical Evidence of Record] #2

    o 9/21/20 – [Plaintiff] [left message] to schedule appt with neuro as she reports she started falling 07/2020. "unexpected falls she has been having. Patient states she feels like her legs are gone, her head goes blank and next thing she knows she is on the ground."

    o 1/22/21 - Neuro visit last seen by Dr Yasin in April 2020 as a televisit encounter due to pandemic for abnormal MRI (Arachnoid cyst). depression is better but spasms and pain. she fells [sic] numb in her legs which comes all of a sudden and lasts for about 30 seconds and is followed by a fall. She has had about 5 falls in the last 7 months. The last fall was about a week ago. At times she has a similar feeling of numbness in her hands and feels her hands become weak and finds it difficult to hold things. has migraines but hasn't had one since August and feels they are under good control. MRI brain with arachnoid cyst. MRI c spine with mild degenerative changes. switch from gabipentin [sic] to pregabalin[.] lose weight[.]

- James Cancer Hosp[ital]

    o 1/22/21 - same visit as above

- Health Partners of Miami

    o 12/21/20 - had to put dog down, uncle died, cousin [overdosed]. still depressed and anxious. pain has not decreased. f/u 3mths. no changes to meds.

    o 9/1/20 - needs new doc[.]

(*Id.* at PageID 115.)

Dr. Mutchler concurred with Dr. Torello's conclusion that Plaintiff's reported symptoms were only "[p]artially consistent" with the medical evidence. (AR, Doc. No. 8-3 at PageID 117.) Dr. Mutchler adopted the exertional limitations identified by Dr. Torello and most of the postural and environmental limitations, except that she opined that Plaintiff could only occasionally climb ramps and stairs and needed to avoid concentrated exposure to noise and vibration. (*Id.* at PageID 118-19.) Dr. Mutchler based these limitations upon fibromyalgia, arachnoid cysts and "related headaches," borderline morbid obesity based on a BMI of over 34, and "episodic leg weakness/fall events" that were "unexplained to date." (*Id.* at PageID 118.) Dr. Mutchler added restrictions on exposure to noise and vibration due to "risks for triggering +/- aggravating headaches" and "related reductions in overall mobility." (*Id.* at PageID 119.) Dr. Mutchler noted that the new evidence submitted and obtained at the reconsideration level "basically supports [the] prior findings." (*Id.*) She concluded that the "prior administrative findings are reasonable and well[-]supported (with minimal/no significant change from initial)." (*Id.*)

The ALJ concluded that he was "substantially persuaded" by Dr. Torello's and Dr. Mutchler's findings. (Decision, Doc. No. 8-2 at PageID 53.) The ALJ explained that the limitations suggested by these reviewers was "consistent with the record and [Plaintiff's] subjective complaints." (*Id.* at PageID 53-54.) However, the ALJ further limited Plaintiff to "no more than occasional" (versus "no more than frequent") activity in several areas of postural movements "out of an abundance of caution." (*Id.* at PageID 54.) The ALJ also adopted the "additional recommended limitations on noise and vibration exposure" that Dr. Mutchler suggested. (*Id.*)

###### C.      Consultative Physician B.T. Onamusi, M.D.

At the request of Plaintiff's representative, the ALJ ordered a post-hearing consultative physical examination. (*See* Decision, Doc. No. 8-2 at PageID 43; AR, Doc. No. 8-2 at 67-68, 90; AR, Doc. No. 8-6 at PageID 350-51.) Dr. Onamusi performed the examination in September 2021. (AR, Doc. No. 8-7 at PageID 533-51.) In his report, Dr. Onamusi noted: "[Plaintiff] came in with a scooter and two walking sticks. She had difficulty getting out of the scooter and was unsteady as she walked[,] even with the walking sticks. She took only a few steps away from the scooter and I had her return to the scooter." (*Id.* at PageID 540.) Due to Plaintiff's presentation, Dr. Onamusi did not ask her to squat, walk on the heels or toes, or get on the examination table. (*Id.*) He therefore did not examine the joints of her lower extremities or her lumbar range of motion. (*Id.*)

Dr. Onamusi found that Plaintiff had "good range of motion in the cervical spine with mild to moderate pain at extremes of motion." (AR, Doc. No. 8-7 at PageID 540.) He noted that Plaintiff was "very tender/sensitive to palpation along the entire spine and muscles of the upper and lower extremities." (*Id.*) According to Dr. Onamusi, Plaintiff was able to grip and grasp with both hands, and exhibited grip strength of twenty pounds with the right hand and twenty-two pounds with the left. (*Id.*) Dr. Onamusi noted that Plaintiff was able to reach forward, push, and pull with the upper extremities, and was able to use her hands for fine coordination, manipulative tasks, and fine fingering movements. (*Id.*) Dr. Onamusi diagnosed chronic neck and back pain, secondary to degenerative changes, and "history of fibromyalgia with considerable pain and

hypersensitive response to palpation along the entire axial and appendicular muscles." (*Id.* at PageID 540.)

Dr. Onamusi concluded that Plaintiff's "subjective symptom reports were consistent with physical examination findings." (*Id.* at PageID 540.) He opined that Plaintiff was able to sit frequently. (*Id.*) He also opined that Plaintiff "exhibited functional capabilities that will preclude standing, walking, climbing, bending, or lifting more than very light items." (*Id.*)

The ALJ concluded that he was "not persuaded" by Dr. Onamusi's opinion. (Decision, Doc. No. 8-2 at PageID 55.) The ALJ acknowledged that Dr. Onamusi "personally examined [Plaintiff] and conducted some musculoskeletal testing," but noted that Dr. Onamusi "did not have [Plaintiff] actually perform a number of regularly tested activities." (*Id.*) The ALJ stated that Dr. Onamusi "appears to have simply accepted [Plaintiff's] self-reported limitations as fact" instead of "performing an independent critical analysis of [Plaintiff's] physical abilities and limitations." (*Id.*) The ALJ also discounted Dr. Onamusi's opinion because the physician concluded that "'subjective symptom reports were consistent with physical examination findings' . . . despite not conducting many of the tests and noting [Plaintiff's] conservative treatment history . . . ." (*Id.*) The ALJ further explained that he was not persuaded by Dr. Onamusi's report because of its "internal inconsistencies and lack of an independent analysis." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that "the ALJ reversibly erred in evaluating the prior administrative medical findings of the state agency reviewing physicians, the medical

source opinions of consultative examining physician Dr. Onamusi, and the objective medical evidence." (SE, Doc. No. 10 at PageID 547.) For the reasons discussed below, Plaintiff's assertion is well-taken and the ALJ's decision should be reversed.

### A. Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[4] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

## B. The ALJ Reversibly Erred In His Evaluation Of The Opinion And Findings Of The Consultative Physician.

The ALJ erred because his analysis of the supportability of consultative physician Dr. Onamusi's opinion is not supported by substantial evidence. Additionally, the ALJ failed to analyze the consistency factor with respect to Dr. Onamusi's opinion in compliance with the applicable regulations. For both reasons, the undersigned Magistrate Judge recommends that the Court reverse and remand the ALJ's decision.

### 1. *The ALJ's supportability analysis is not supported by substantial evidence.*

The ALJ explained that he was not persuaded by Dr. Onamusi's opinion because of several examples of what he considered to be "internal inconsistencies and lack of an independent analysis" in Dr. Onamusi's report. (Decision, Doc. No. 8-2 at PageID 55.)

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

12

Thus, the ALJ arguably explained his consideration of the supportability factor as required by 20 C.F.R. § 404.1520c(c)(1). However, the ALJ's supportability analysis is itself not supported by substantial evidence.

The ALJ stated that Dr. Onamusi's opinion was internally inconsistent because Dr. Onamusi opined that Plaintiff's "subjective symptom reports were consistent with physical examination findings" even though he "did not have [Plaintiff] actually perform a number of regularly tested activities." (Decision, Doc. No. 8-2 at PageID 55) (citing AR, Doc. No. 8-7 at PageID 540).) But the ALJ failed to acknowledge Dr. Onamusi's explanation for why Plaintiff did not perform these activities—namely, because she was experiencing difficulty with walking and movement. (AR, Doc. No. 8-7 at PageID 540.) Because the ALJ did not address Dr. Onamusi's explanation and explain why it was unsatisfactory (if it indeed was), his conclusion that Dr. Onamusi's opinion is internally inconsistent is not supported by substantial evidence.

Significantly, the ALJ also failed to acknowledge abnormalities that Dr. Onamusi documented during his physical examination of Plaintiff. (Decision, Doc. No. 8-2 at PageID 55.) Although the ALJ summarized Dr. Onamusi's examination, the ALJ only discussed the normal examination findings:

> During his consultative examination, and to the extent that [Plaintiff's] physical abilities were actually tested, Dr. Onamusi noted that [Plaintiff] had entirely normal and full[-]strength muscle examinations and range of motion (Exhibit 11F at 1-5). All of this indicates that [Plaintiff] does not appear to be as physically limited as her allegations would allege.

(*Id.* at PageID 53.) The abnormal findings that the ALJ ignored included Plaintiff's ambulation difficulties, mild to moderate pain at extremes of motion of the cervical spine,

and being "very tender/sensitive to palpation along the entire spine and muscles of the upper and lower extremities." (AR, Doc. No. 8-7 at PageID 540.)

The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge any of the abnormal examination findings leads the Court to conclude that the ALJ did not resolve the conflicts in the evidence. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

Accordingly, the ALJ's conclusion that Dr. Onamusi's report was not supportable because of internal inconsistencies and the lack of an independent analysis is itself unsupported by substantial evidence. The undersigned therefore recommends reversal.

### 2. *The ALJ failed to consider consistency pursuant to the applicable regulations.*

The ALJ was required to explain his analysis of the supportability and consistency factors when considering the persuasiveness of consultative physician Dr. Onamusi's opinion. 20 C.F.R. § 404.1520c(b)(2). However, the ALJ appeared to conflate these

requirements and did not address the consistency factor. The Court therefore concludes that the ALJ did not comply with Section 404.1520c(b)(2).

As discussed above, the ALJ concluded that he was "not persuaded" by Dr. Onamusi's opinion because of the "internal inconsistencies and lack of an independent analysis." (Decision, Doc. No. 8-2 at PageID 55.) Specifically, the ALJ explained:

> Dr. Onamusi personally examined [Plaintiff] and conducted some musculoskeletal testing, but he did not have [Plaintiff] actually perform a number of regularly tested activities. Instead of performing an independent critical analysis of [Plaintiff's] physical abilities and limitations, Dr. Onamusi appears to have simply accepted [Plaintiff's] self-reported limitations as fact. His medical opinion statement still noted that "subjective symptom reports were consistent with physical examination findings" (Id. at 8) despite not conducting many of the tests and noting [Plaintiff's] conservative treatment history (Id at 6).

(*Id.*)

At most, this discussion addresses the supportability factor required by 20 C.F.R. § 404.1520c(c)(1). But it does not address the consistency factor required by 20 C.F.R. § 404.1520c(c)(2). Supportability requires consideration of "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency requires consideration of "the evidence from *other* medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2) (emphasis added). Because the ALJ only considered Dr. Onamusi's examination findings, the testing that he performed, and his explanation of why he considered Plaintiff's subjective complaints to be consistent with the objective evidence, the ALJ only addressed the supportability factor. (Decision, Doc. No. 8-2 at PageID 55.) The ALJ's failure to explain his consideration of the consistency factor was an error.

15

Defendant argues that the ALJ addressed consistency by "noting Dr. Onamusi's acknowledgement of Plaintiff's conservative treatment history, which speaks to the rest of the record the ALJ detailed in his decision." (Mem. In Opp., Doc. No. 12 at PageID 575.) The Court acknowledges that ALJs need not actually use the terms "supportability" and "consistency" to show that they considered these factors. Rather, the Court must examine what the ALJ actually considered. Having done that here, the Court concludes that the ALJ did not address the consistency factor. The ALJ referred to Plaintiff's conservative treatment history solely to support his conclusion that Dr. Onamusi's report had internal inconsistencies. The ALJ did not actually compare Dr. Onamusi's opinion to Plaintiff's treatment history. Nor did he compare it to other evidence from other medical sources and nonmedical sources. He therefore did not consider the consistency factor.

The ALJ's failure to comply with a legal requirement constitutes reversible error, as the error was not harmless and instead prejudiced Plaintiff on the merits. *See Rabbers*, 582 F.3d at 654. This error provides another reason why the case should be remanded.

### C. The ALJ Reversibly Erred When Evaluating The Findings Of The State Agency Medical Consultants.

The ALJ also erred because he did not address the supportability of the state agency medical consultants' findings, as required by 20 C.F.R. § 404.1520c(b)(2).

As discussed above, the ALJ concluded that he was substantially persuaded by the consultants' findings. (Decision, Doc. No. 8-2 at PageID 53.) The ALJ explained:

> The undersigned finds the nature of these limitations consistent with the record and [Plaintiff's] subjective complaints, but out of an abundance of caution, has imposed the "no more than occasional" level of limitation on the various postural movements, rather than the "no more than frequent"

16

> level of limitation recommended by the reviewing physicians. Dr. Mutchler
> added additional recommended limitations on noise and vibration exposure,
> which the undersigned has also adopted.

(*Id.* at PageID 54.) At most, this discussion addresses the consistency factor. It does not

address the supportability factor because the ALJ did not explain his consideration of the

consultants' supporting explanations and summaries of the evidence.

Defendant asserts that the ALJ addressed the supportability factor because "the

ALJ provided a detailed consideration of the evidence the State agency physicians relied

on . . . ." (Mem. In Opp., Doc. No. 12 at PageID 572.) Defendant cites two Sixth Circuit

cases in support of the assertion that the ALJ's decision should be read as a whole to

determine whether his consideration of the opinion evidence is consistent with the

regulations. (*Id.* (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir.

2014); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).) These cases

are inapplicable because they applied prior regulations for evaluating opinion evidence.

Those prior regulations did not expressly require ALJs to explain their consideration of

the supportability and consistency factors. By contrast, the new regulations that apply in

this case do impose such a requirement. 20 C.F.R. § 404.1520c(b)(2).

Defendant next cites to a case from this district to support the assertion that the

ALJ's discussion—elsewhere in the decision—of medical evidence upon which the state

agency reviewers based their findings adequately addressed the supportability factor.

(Mem. In Opp., Doc. No. 12 at PageID 572-73 (citing *Tyrone H. v. Comm'r. of Soc. Sec.*,

No. 2:22-cv-3652, 2023 WL 2623571, at *8 (S.D. Ohio Mar. 24, 2023) (Jolson, M.J.).)

Plaintiff cites to two cases (one from this district and another from a different district in

this circuit) which support the opposite conclusion. (Reply, Doc. No. 13 at PageID 579-80 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021); *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.).)

The undersigned Magistrate Judge concludes that the rationale in *Hardy* and *Miles* is more consistent with the letter and spirit of the new regulations for evaluating opinion evidence. Since those regulations went into effect, ALJs must provide a "minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017); *see also* 20 C.F.R. § 404.1520c(b) ("We **will** articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record.") (emphasis added). The articulation requirement includes explanations of the ALJ's analyses of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2) ("[W]e **will** explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.") (emphasis added). A rule that requires courts and claimants to glean the ALJ's explanation of the supportability and consistency factors from unspecified parts of his decision does not satisfy the articulation requirement.

The undersigned also does not agree that "an inherent lack of clear delineation between supportability and consistency" (*Tyrone H.*, 2023 WL 2623571, at *6) prevents ALJs from separately analyzing these factors when they evaluate state agency consultant opinions. Distinct sections of the Disability Determination Explanation form require state

18

agency consultants to (1) summarize the evidence that they reviewed and determined to be relevant, (2) explain whether the evidence is consistent with the claimant's subjective complaints, (3) evaluate the medical opinions in the file, and (4) explain why the evidence supports the limitations assessed. (*E.g.,* AR, Doc. No. 8-3 at PageID 95, 97-100, 115, 117-21.) These reviewers routinely support their opinions with summaries of the evidence and explanatory statements. ALJs can therefore readily analyze supportability by considering the "objective medical evidence and supporting explanations presented by" them. 20 C.F.R. § 1520c(c)(1). The mechanism for analyzing supportability plainly differs from the mechanism for analyzing consistency, which requires ALJs to compare the consultants' opinions with the entire record. 20 C.F.R. § 1520c(c)(2).

In this case, the ALJ failed to provide the minimal articulation required to address the supportability factor when evaluating the state agency medical consultants' findings. Although the consultants provided summaries of evidence and explanations to support their opinions, the ALJ did not address them. Instead, he relied on Plaintiff's "subjective complaints" and "the record" generally to explain why he was "substantially persuaded" by the state agency medical consultants' opinions. (Decision, Doc. No. 8-2 at PageID 53-54.) The ALJ therefore did not explain his consideration of the supportability factor.

The ALJ's failure to comply with a legal requirement constitutes reversible error, as the error was not harmless and instead prejudiced Plaintiff on the merits. *See Rabbers*, 582 F.3d at 654. This error provides another reason why the case should be remanded.

## V.     REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. The undersigned finds that a remand is appropriate here.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was

20

under a disability and whether her applications for Disability Insurance Benefits and

Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 10) be GRANTED;

2.  The Court REVERSE the Commissioner's non-disability determination;

3.  No finding be made as to whether Plaintiff was under a "disability" within
    the meaning of the Social Security Act;

4.  This matter be REMANDED to the Social Security Administration under
    Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent
    with this Decision and Order; and

5.  This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **FOURTEEN** days after

being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d),

this period is extended to **SEVENTEEN** days if this Report is being served by one of the

methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall

specify the portions of the Report objected to and shall be accompanied by a

memorandum of law in support of the objections. If the Report and Recommendation is

based in whole or in part upon matters occurring of record at an oral hearing, the

objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).